NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 19, 2012[*]
Decided November 21, 2012

**Before**

WILLIAM J. BAUER, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 12-1103

| | |
|---|---|
| HILTON LLOYD KELLER, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Southern District of Illinois. |
| | |
| *v.* | No. 3:06-CV-661 JPG |
| | |
| WILLARD O. ELYEA, | Richard Mills, |
| *Defendant-Appellee*. | *Judge*. |

## O R D E R

Hilton Keller, a prisoner at Menard Correctional Center, appeals the district court's grant of summary judgment against him in this suit under 42 U.S.C. § 1983 asserting deliberate indifference to his acid-reflux condition. The district court concluded that the defendant, Dr. Willard Elyea, the medical director for the Illinois Department of Corrections, was entitled to qualified immunity. We affirm the grant of summary judgment,

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. The appeal is thus submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2)(C).

but on the alternative ground that Keller has not shown that Dr. Elyea violated his constitutional rights.

Keller wrote three letters complaining of inadequate medical treatment to Dr. Elyea. As IDOC's medical director, Dr. Elyea oversaw the administration of health services to some 45,000 inmates in Department custody across Illinois. Keller's letters explained (1) that he had been denied access to an ear, nose, and throat specialist to treat his persistent and severe acid reflux and (2) that a prison doctor's botched biopsy had resulted in a nerve being severed in his neck. Keller received no response other than a letter from a Menard administrator stating that Dr. Elyea's staff reviewed one of his letters but did not recommend any action.

Keller sued Dr. Elyea under § 1983 for deliberate indifference by not intervening to order additional treatment. Dr. Elyea moved for summary judgment on grounds that he was not personally involved in Keller's medical care and moreover was entitled to qualified immunity. He attached answers (to Keller's interrogatories) in which he stated that he did not recall receiving any letters from Keller.

The district court granted summary judgment for Dr. Elyea on the basis of qualified immunity. The court acknowledged that a factual issue might exist in regard to Dr. Elyea's personal involvement, but nevertheless found Dr. Elyea entitled to qualified immunity because his failure to intervene could not be said to constitute sufficiently egregious conduct. The court added that it could not find "any case which holds that the top medical official within a state's corrections department—a department which houses 45,000 inmates at numerous facilities—is deliberately indifferent to an inmate's serious medical needs by failing to address that inmate's concerns which were expressed in three letters."

On appeal Keller challenges the district court's ruling that Dr. Elyea was entitled to qualified immunity. He argues that he had a clearly established constitutional right to have his medical conditions addressed, and that his letters sufficed to establish Dr. Elyea's supervisory responsibility.

The district court indeed viewed this issue through too narrow a lens: there need not be a case "on all fours," with identical facts, in order for a constitutional right to be clearly established for the purposes of qualified immunity. *Estate of Escobedo v. Bender*, 600 F.3d 770, 784 (7th Cir. 2010); *Chaklos v. Stevens*, 560 F.3d 705, 716–17 (7th Cir. 2009); *Lee v. Young*, 533 F.3d 505, 512 (7th Cir. 2008). Federal courts have long held that deliberate indifference to prisoners' serious medical conditions violates their Eighth Amendment right to be free from cruel and unusual punishment. *E.g.*, *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Cleveland-Perdue v. Brutsche*, 881 F.2d 427, 430 (7th Cir. 1989). Of particular relevance here, we have

ruled that a supervisor may be liable when he turns a blind eye to an inmate's letters requesting medical treatment. *Reed v. McBride*, 178 F.3d 849, 854 (7th Cir. 1999); *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996). Thus we cannot agree with the district court's conclusion that there was no clearly established law that would have put Dr. Elyea on notice that his alleged conduct violated Keller's constitutional rights.

But we need not reach the question of qualified immunity because there is a more direct basis for affirmance—Keller has not shown that Dr. Elyea caused or participated in any constitutional violation. *See George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) (citing cases). As the district court recognized, Dr. Elyea, the head of the prison system's medical hierarchy, cannot be vicariously liable for the acts of his staff. *Burks v. Raemisch*, 555 F.3d 592, 593 (7th Cir. 2009); *George*, 507 F.3d at 609. But the principal case relied upon by the court to deny summary judgment on this issue, *Reed v. McBride*, differs from this case in an important way. In *Reed*, we found disputed issues of supervisory liability when supervisors acknowledged receiving the plaintiff's complaint letters and were therefore aware of the continuing harm he was suffering. 178 F.3d at 854. Here, by contrast, Keller has not produced evidence that Dr. Elyea was aware of Keller's conditions or that the alleged violations by the treating medical staff were caused by any policy Dr. Elyea put in place. *See Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006) (upholding summary judgment in absence of evidence that supervisor read inmate's complaint letters); *Vance v. Peters*, 97 F.3d 987, 993–94 (7th Cir. 1996) (same).

AFFIRMED.